UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOCKE AIRD and
DAWNANN MORELLA,

                                  CASE NO.:  2:19-cv-00550-SPC-NPM

       Plaintiffs,

v.

DAS HOTELS, LLC, dba Knights Inn,
a Florida Limited Liability Company,
SURESH "SAM" PATEL, Individually,
and BINA PATEL, Individually,

       Defendants.

_____/

## JOINT MOTION FOR APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

Plaintiffs, Docke Aird ("Aird"), and Dawnann Morella ("Morella") (together, "Plaintiffs"), and Defendants DAS Hotels, LLC d/b/a Knights Inn ("DAS"), Suresh "Sam" Patel ("Sam Patel"), and Bina Patel ("Bina Patel") (together, "Defendants;" Plaintiffs and Defendants are collectively referred to in this motion as the "Parties"), through their undersigned counsel, respectfully move this Court to: 1) approve the terms of the settlement they have agreed upon following arms-length negotiations; 2) dismiss this case with prejudice  and (3) grant such further relief as the Court deems just.  In support of this motion, the Parties state as follows.

### FACTUAL BACKGROUND

DAS operates a Knights Inn motel in Port Charlotte, Florida.  DAS is owned and operated by Sam and Bina Patel.  Plaintiff Aird worked in maintenance for DAS as a

handyman from approximately February 2018 through February 2019, and Plaintiff Morella worked as a housekeeper from approximately January 2018 through January 2019.

In their Complaint and Demand for Jury Trial filed on August 6, 2019 ("Complaint"), Plaintiffs alleged that Defendants failed to pay them proper minimum wages for all of the hours that they worked each week and proper overtime pay for the hours that they worked over forty (40) in a workweek.  ECF No. 1, ¶¶ 46-62.  Plaintiffs sued Defendants seeking to recover minimum wage pay and overtime wages under the Fair Labor Standards Act ("FLSA").  *Id*.  Specifically, Plaintiffs alleged that while employed with DAS, Defendants provided Plaintiffs with a studio motel room to live in in order for Plaintiffs to perform work for Defendants when required.  *See id*. at ¶¶ 41-42.  Plaintiffs also alleged that Defendants required them to remit their entire paychecks back to Defendants on pay day every other week in order to compensate DAS for "rent" accrued associated with the studio motel room where Plaintiffs lived.  *See id*. at ¶¶ 43-44.  On September 3, 2020, Defendants filed their Answer and Counterclaim,[1] alleging that Plaintiffs owed Defendants a total of $8,627.92 in unpaid rents.  *See* D.E. 9.  Plaintiffs moved to dismiss the Counterclaim, and DAS ultimately voluntarily dismissed the counterclaim—albeit without prejudice.  *See* D.E. 11; D.E. 23.

Throughout the litigation Defendants vigorously disputed that Plaintiffs were owed damages at all.  In fact, Defendants allege that Plaintiffs owed Defendants money for unpaid rents.  Defendants disputed Plaintiffs' underlying theory of the case (*i.e.*, that Plaintiffs were required to live on Defendants' premises to Defendants' benefit and Defendants did not pay Plaintiffs any wages at all); and 2)the actual hours Plaintiffs claimed to have worked.  To

---

[1] Only Defendant, DAS Hotels, LLC brought the counterclaim against Plaintiffs.  *See* D.E. 9 at 5.

2

support their view that Plaintiffs were not owed wages, Defendants argued that Plaintiffs lived on Defendants premises prior to their employment, and approached Defendants inquiring whether they could work for Defendants in exchange for a place to live. Defendants alleged that the rate charged for the lodging provided Plaintiffs was reasonable,[2] and Plaintiffs were able to retain the entirety of their paychecks on some pay days, or a portion of their paychecks on others despite Plaintiffs' ever increasing rent balance. Defendants produced records that showed the dates that Plaintiffs made rent payments and the amounts that Plaintiffs paid. Defendants argued that these records demonstrated that there were some pay days where Plaintiffs were permitted to retain their entire paychecks or a portion of their paychecks. Additionally, in order to support their view regarding the actual hours worked, Defendants produced the clock records for the Plaintiffs that showed the hours that they worked each week. The clock records for Plaintiff Aird demonstrated several work weeks where he recorded much more than forty (40) hours in a work week, and other weeks where he recorded no overtime. Defendants also produced receipts which they allege demonstrated additional cash payments made to Plaintiffs in addition to their paycheck. The Parties independently evaluated these materials in order to assess Plaintiffs' claims and Defendants' position.

In communications with Plaintiffs' counsel regarding settlement, Defendants' counsel

---

[2] From December 21, 2017 through December 28, 2017, Plaintiffs lived in room 129 (a non-smoking room with a king bed) and were charged $89.55 per night; from December 29, 2017 through February 3, 2018, Plaintiffs lived in room 106 (a smoking room with two double bed) and were charged $89.55 per night; from February 4, 2018 through February 24, 2018, Plaintiffs remained in room 106, but their nightly rate was reduced to $72.75; from February 25, 2018 through April 20, 2018, Plaintiffs lived in room 305 (a room with a king bed and a small kitchen) and were charged $72.75 per night; and from April 21, 2018 through February 5, 2019, Plaintiffs remained in room 305, but their nightly rate was reduced to $47.99. Defendants argue that each room change was upon Plaintiffs request, and Defendants were not profiting off of Plaintiffs rent payments.

3

conveyed that Defendants emphatically denied Plaintiffs' allegations of wrongdoing. Defendants' counsel explained that Plaintiffs were provided the studio motel room as a benefit of employment, and were not required to live on the premises to Defendants' benefit. Moreover, Defendants argued that the time that each Plaintiff recorded on their time sheets were accurate. Plaintiffs alleged that they often performed work "off-the-clock," and that Defendants knew about, or should have known about, based on alleged communications between the Parties. Defendants alleged that Plaintiffs were advised regarding the importance of recording their work time correctly on numerous occasions, and that Defendants were under the impression that Plaintiffs were properly recording the time that they worked each work week. Defendants also maintained that even if Plaintiffs were owed wages, Defendants are entitled to a setoff due to the rents owed to them. Plaintiffs maintained that they were required to live on Defendants' premises to Defendants benefit, and therefore, Defendants were not entitled to take a credit against their wages. Plaintiffs also argued that even assuming *arguendo* that Plaintiffs were provided with lodging at the motel as a benefit of their employment, Defendants charged them an unreasonable rate for rent, and failed to maintain the records necessary in order to successfully claim a credit against wages.

At several points throughout the duration of the litigation, the Parties engaged in settlement discussions, but were unable to reach an agreement due to the Parties respective views of the facts. Pursuant to the Court's FLSA scheduling order, the Parties preliminarily exchanged documents pertaining to Plaintiffs' alleged unpaid wages, and the Plaintiffs

answered the Court's Interrogatories.  *See* D.E. 18.[3]  The Parties held the in person settlement conference on December 4, 2019, but were unsuccessful in negotiating a settlement at that time.  After the in person settlement conference, Plaintiffs served their discovery requests in an effort to obtain additional information with regard to their claims against Defendants including whether payments were made to Defendants for rent and the amounts charged to Plaintiffs.  Defendants responded to Plaintiffs' discovery requests on June 1, 2020.  Based on the additional information provided by Defendants, Plaintiffs were able to formulate a more precise demand to present at mediation.

Following these exchanges of documents and information and conversations in which counsel explained their respective Parties' views of the facts, the Parties negotiated a settlement of Plaintiffs' claims against Defendants at mediation on June 16, 2020.  Through their counsel, with the assistance of a mediator experienced in wage and hour employment matters, the Parties reached agreement upon the settlement amounts DAS Hotels, LLC would pay, on behalf of all Defendants, to Aird and Morella, as well as the amount DAS would pay for Plaintiffs' attorney's fees and costs.  The Parties negotiated the amount that DAS will pay Plaintiffs for their attorney's fees and costs separately from the amounts DAS will pay Plaintiffs.  Taking into account the documents provided by Defendants that demonstrated there were some pay checks that Plaintiffs were able to retain completely or portions thereof, and assuming Defendants' time records are correct, Plaintiff Morella's damages are

---

[3] Plaintiff Aird's responses to the Court's Interrogatories estimated that he was owed approximately $29,376.00, plus an equal amount as liquidated damages.  Plaintiff Morella's responses to the Court's Interrogatories estimated that she was owed approximately $12,983.75.  In responding to the Court's Interrogatories, Plaintiff Morella realized that she generally did not work more than forty (40) hours in a work week.  Additionally, Plaintiff Aird calculated his damages based on his recollection that he worked approximately 56 hours per week because he did not believe that the hours recorded on the time records provided by Defendant were accurate.

approximately $4,800.00, plus an equal amount as liquidated damages, and Aird's damages are approximately $10,000.00, plus an equal amount as liquidated damages.[4] These estimations do not take into account the receipts that Defendants allege represent additional cash payments made to Plaintiffs.

As reflected in the Settlement Agreement and Full and Final Release of Claims ("Agreement"), the settlement amounts to be paid to Plaintiffs include an amount for a portion of liquidated damages, as well as a mutual general release and other promises contained in the Agreement.[5] The Agreement is attached hereto as Exhibit A. Specifically, on behalf of Defendants, DAS will pay Aird $12,000.00, which consists of $10,000.00 for his

[4] Although Plaintiffs maintain that they were not permitted to retain any of their paychecks, Defendants asserted that each of the Plaintiffs' paychecks that were retained by Defendants were applied to the unpaid rent balance and demonstrated in the records. Additionally, Defendants point out the fact that Plaintiff Aird was permitted to record extensive amounts overtime in some work weeks, and did not record overtime in other weeks, militates against the finding that Plaintiff Aird worked more than forty hours in all work weeks. Thus, due to lack of documentary evidence demonstrating otherwise, Plaintiffs agreed to assume, for the purposes of settlement, that where the records demonstrated no payment was applied to the unpaid rent, they were permitted to retain at least a portion of their wages for that particular pay period.

[5] This Court has approved FLSA settlements in which plaintiffs also agreed to general releases in exchange for separate consideration. The Agreement contains a mutual general release, where Defendants also release all claims they may have against Plaintiffs. This is valuable to Plaintiffs as Defendants remain convinced that they have a valid cause of action for unpaid rents in the amount of $8,627.92 against Plaintiffs. *See, e.g.*, *Southwick v. Pystmo, LLC*, Case No. 2:16-cv-625-FtM-99CM, 2018 U.S. Dist. LEXIS 44979, *2 (M.D. Fla. Mar. 20, 2018) (Steele, J.); *Herrera v. R & L Carriers, Inc.*, Case No: 2:16-cv-795-FtM-99MRM, 2017 U.S. Dist. LEXIS 143608, *6 (M.D. Fla. Aug. 31, 2017) (McCoy, M.J.), *report and recommendation adopted by*, 2017 U.S. Dist. LEXIS 143605 (M.D. Fla. Sept. 6, 2017); *Scheall v. Nicaea Acad., Inc.*, Case No: 2:14-cv-653-FtM-29MRM, 2016 U.S. Dist. LEXIS 46528, *5 (M.D. Fla. Mar. 25, 2016) (McCoy, M.J.), *report and recommendation adopted by*, 2016 U.S. Dist. LEXIS 46529 (M.D. Fla. Apr. 6, 2016) (Steele, J.); *Mainous v. Barry's Home Furnishings, LLC*, Case No: 2:15-cv-576-FtM-29MRM, 2016 U.S. Dist. LEXIS 47155, *3 (M.D. Fla. Mar. 21, 2016) (McCoy, M.J.), *report and recommendation adopted by*, 2016 U.S. Dist. LEXIS 47160 (M.D. Fla. Apr. 7, 2016); *Caballero v. Lantern Motors, Inc.*, Case No: 2:14-cv-641-FtM-38MRM, 2015 U.S. Dist. LEXIS 168214, *2 (M.D. Fla. Dec. 11, 2015) (McCoy, M.J.), *report and recommendation adopted by*, 2015 U.S. Dist. LEXIS 168199 (M.D. Fla. Dec. 16, 2015); *Sommer v. Augie My Boy, LLC*, Case No: 2:14-cv-77-FtM-29CM, 2015 U.S. Dist. LEXIS 6711, *2 (M.D. Fla. Jan. 21, 2015) (Steele, J.).

claimed wage damages, $2,000.00 for liquidated damages.  DAS will pay Morella $6,000.00, which consists of $4,000.00 for her claimed wage damages, $2,000.00 for liquidated damages.  The Agreement also states that DAS will pay $12,000.00 for Plaintiffs' attorney's fees and costs.  Therefore, assuming that Defendants' records are accurate, Plaintiffs will be receiving nearly all of their unpaid wages, and a portion of their liquidated damages under the Agreement as a reasonable settlement of a bona fide dispute.[6]

This matter involves a bona fide dispute regarding whether and to what extent Plaintiffs are entitled to any damages.  The Agreement represents a reasonable compromise given the hotly disputed facts in this case, and due to the fact that Defendants claim entitlement to a set off for unpaid rents.  Defendants maintain that they complied with the FLSA.  As demonstrated in this motion, the terms of the Agreements were reached following negotiations by experienced counsel, and a mediator experienced in wage and hour disputes. The Agreement's terms reflect the recognition of the risks and costs of litigation by the Parties with counsel experienced in such matters.  In order to avoid these risks and costs, the Parties agree that resolving this litigation in accordance with the Agreements makes sense for all concerned.  The Parties therefore urge this Court to approve their settlement.

## MEMORANDUM OF LAW

In the Eleventh Circuit, a compromise of an FLSA claim must either be supervised by the Secretary of Labor or approved by the district court.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  In order to approve the settlement, a court must determine that the compromise is a fair and reasonable resolution of a bona fide

---

[6] Plaintiffs do not admit that Defendants records are accurate.  However, Plaintiffs acknowledge that a jury may ultimately find Defendants records more credible than their testimony.

dispute under the FLSA. *Id.* at 1354.  If the settlement is fair and reasonable, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*    The terms of the Parties' settlement plainly comply with the spirit of *Lynn's Food Stores, Inc.*

In considering FLSA settlements, courts must determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute." *Southwick v. Pystmo, LLC*, Case No. 2:16-cv-625-FtM-99CM, 2018 U.S. Dist. LEXIS 44979, *2 (M.D. Fla. Mar. 20, 2018) (Steele, J.).  To this end, Florida district courts frequently consider the following factors: (i) the existence of fraud or collusion behind the settlement; (ii) the complexity and duration of the litigation; (iii) the stage of the proceedings; (iv) the probability of plaintiffs' success; (v) the range of possible recovery; and (vi) the opinions of counsel. *See, e.g., Seda v. All Fla. Appliance & A/C, Inc.*, No. 8:15-cv-00311, 2015 U.S. Dist. LEXIS 75787, *3 (M.D. Fla. June 4, 2015) (Pizzo, M.J.) (citing cases), *report and recommendation adopted by*, 2015 U.S. Dist. LEXIS 75791 (M.D. Fla. June 11, 2015).  This Court has emphasized the importance of an "adversarial context" as a means to render a settlement "more likely to reflect a reasonable compromise of disputed issues." *Herrera v. R & L Carriers, Inc.*, Case No: 2:16-cv-795-FtM-99MRM, 2017 U.S. Dist. LEXIS 143608, *3 (M.D. Fla. Aug. 31, 2017) (McCoy, M.J.) (internal quotation marks and quotation omitted).  Further, this Court has stated:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claim; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable

> on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

*Id.* at \*6-7 (quoting *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009)).

Here, Plaintiffs negotiated, through their counsel and a mediator, settlement terms that are satisfactory to the Parties. The undersigned counsel, who are experienced in wage and hour matters, view the agreed-upon terms as a good outcome for the Parties. It could be years before this matter is ready for a trial, and this Court ultimately could determine that Plaintiffs are not entitled to any recovery. There has been no fraud or collusion in the settlement of this case, and settlement will prevent expensive, protracted, and uncertain litigation. Moreover, the amount for attorney's fees and costs that DAS will pay to Plaintiffs is reasonable given the state of the case, and was agreed upon without regard to the amounts paid to Plaintiffs. Ultimately, after assessing their respective positions and consulting with their counsel, the Parties decided that it is in their respective best interests to resolve this matter early through settlement rather than to proceed through protracted and costly litigation.

Based upon the above, the settlement reached in this matter reflects "a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Herrera*, 2017 U.S. Dist. LEXIS 143608, at \*3 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). The Parties respectfully submit that their settlement should be approved.

## CONCLUSION

In light of the contested issues presented in this case and the potentially protracted and expensive litigation that lies ahead, the settlement terms represent a fair and equitable resolution of this matter.  The Parties therefore respectfully request that the Court enter an order: (1) approving the terms of their Agreements; (2) dismissing this action with prejudice ; and (3) granting such further relief as the Court deems just.

Dated: June 26, 2020                        Respectfully submitted,

*/s/  Chanelle J. Ventura*                     */s/ Gordon Duncan*
Chanelle J. Ventura                         Gordon Duncan
Fla. Bar No.1002876                         Fla. Bar No. 0258563
**MORGAN & MORGAN, P.A.**          **DUNCAN & ASSOCIATES, P.A.**
8151 Peters Road, Suite 4000              P.O. Box 249
Plantation, FL 33324                        Fort Myers, FL 33902
Tel: (954) 318-0268                         Tel: 239.334.4574
Email: CVentura@forthepeople.com     Email: Gordon@duncanassocaitesfl.com

*Counsel for Plaintiffs*                        *Counsel for Defendants*